No. 30,749.

STANDISH HALL, Trustee, *Appellant,* v. MOLLIE GOLDSWORTHY et al., *Appellees.*

(14 P. 2d 659.)

Opinion filed October 8, 1932.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson, H. T. Horrell* and *Frederick W. Aley,* all of Wichita, for the appellant.

*Willard M. Glasco* and *Harry G. Carlson,* both of Wichita, for the appellees.

The opinion of the court was delivered by

SLOAN, J.: This was an action to foreclose a deed of trust. The instrument was executed by R. V. Heckman, of the first part, and the Guarantee Title and Trust Company, as trustee, of the second part. The conveyance is to the second party in trust for the equal pro rata benefit and security of the bondholders. It conveys real estate, which is described, "together with all rents, issues and profits which shall hereafter accrue from said premises, which rents, issues

and profits are hereby conveyed and assigned to said party of the second part and its successors in trust."

Paragraph eight includes the following:

"And in the event of the failure of the first party to pay said obligation or any part thereof or any of the interest when the same matures, the said second party will be entitled to collect and receive all said rents, issues and profits and apply the same to the payment of said obligation, in addition to the other remedies herein provided."

Paragraph ten of the trust deed provides:

"The trustee shall be entitled to a reasonable compensation for all services rendered hereunder in connection with the trust and all counsel fees, expenses, charges and other disbursements incurred by the trustee in discharge of its duties as such shall be paid by the first party or out of the trust estate."

The instrument also recites that it is given to secure the payment of certain bonds bearing interest at six per cent per annum, payable semiannually to the bearer or registered owner at the office of the Guarantee Title and Trust Company. On default the trustee is authorized to institute foreclosure proceedings and in such event he is vested with power to take judgment as trustee and bid in the property for the bondholders. The appellant is the successor in trust to the Guarantee Title and Trust Company. The maker failed to pay the interest maturing April 1, 1931, and the taxes for the year 1930. On August 13, 1931, the trustee notified the tenants not to pay any rent to any person except the trustee, under penalty of being required to pay such rents twice. During the pendency of the suit the parties agreed that the rent might be held by Willard M. Glasco to abide the final judgment of the court. The Guarantee Title and Trust Company failed August 6, 1930. Prior to that date there had been paid to said trust company the sum of $167.31, to be applied on the bond interest as it matured. This amount at the time of the trial was in the hands of the receiver of the trust company. Some time after the making of the trust deed the property therein described was conveyed to the appellee, Mollie Goldsworthy, and by the terms of the instrument she assumed and agreed to pay the bonds, and to comply with the terms and conditions of the deed of trust.

The court, on the trial of the case, reached the following conclusions of law:

"First. The provision in the trust deed charging the mortgagors with compensation of the trustee is void as being against public policy.

"Second. That the bondholders must bear the loss, if any, with respect to the $167.31 incurred by the failure of the Guarantee Title and Trust Co.

"Third. That under the facts found, the trustee is not entitled to collect the rents and profits."

The court rendered judgment in accordance with the conclusions of law, and the appeal is taken from the judgment.

The appellant contends that the court erred in holding that the appellant was not entitled to the benefit of the rents and profits accruing after default and demand. It will be observed that the instrument purports to convey all of the rents, issues and profits which shall accrue on the premises, and it is provided that the second party may collect and receive all the rents, issues and profits arising from said real estate after default and apply the same to the payment of the obligation.

It is an elementary rule of the law of property and contracts that competent parties may make any contract they choose with reference to the ownership, use and possession of their property so long as such contract does not contravene legal prohibitions established by statute or the common law. The law of mortgages has passed through a long process of evolution until the instrument as we now have it has little or none of the attributes of the instrument as it was originally conceived. It is no longer a conveyance, and the mortgagee acquires no estate whatever in the property, either before or after condition broken, but acquires only a lien securing the indebtedness described in the instrument. (*Goodrich v. Comm'rs of Atchison Co.,* 47 Kan. 355, 28 Pac. 200; *Kelso v. Norton,* 65 Kan. 778, 70 Pac. 896.) While we have a statutory form of mortgage (R. S. 67-303) this court has repeatedly held that no particular form of instrument is necessary to create the mortgage contract if it contains the necessary elements. The instrument may be in form an absolute conveyance, but if it is given for the security of a debt it is nevertheless a mortgage and subject to the established rules of procedure for its enforcement. (*Hegwood v. Leeper,* 100 Kan. 379, 164 Pac. 173; *Lincoln State Bank v. Breazier,* 122 Kan. 423, 251 Pac. 1080; *State Reserve Bank v. Groves,* 125 Kan. 661, 266 Pac. 42.) The mortgagor is entitled to retain possession of the mortgaged property in the absence of a stipulation to the contrary. (R. S. 67-301.) This statute was adopted in 1868 and its evident purpose was to entirely eliminate the attributes of the common-law mortgage. The possession contemplated in this statute

necessarily applies to the immediate possession and occupancy of the premises. It was not intended to authorize a contract for the possession of the premises upon any future contingency, such as default in payment or failure to pay taxes. (*Live Stock Co. v. Trading Co.*, 87 Kan. 221, 123 Pac. 733. *Williams v. Schrock*, 118 Kan. 347, 235 Pac. 111.) In other words, if the mortgagee desires the possession of the premises such possession must be obtained and voluntarily consented to by the mortgagor. It cannot rest upon the happening of some future event. It has been held that stipulations in the mortgage instrument for possession of the mortgaged property upon default are of no avail to the mortgagee. (*Bank v. Williams*, 100 Kan. 140, 143, 163 Pac. 647.) He cannot maintain an action in ejectment, but must on condition broken follow the statutory procedure for the foreclosure of mortgages. (*State Reserve Bank v. Groves*, supra.)

If the mortgagee is given or obtains peaceable or lawful possession of the mortgaged premises he is charged with the reasonable rental value thereof (*Walter, Adm'r, v. Calhoun*, 88 Kan. 801, 129 Pac. 1176) and can only be ousted from such possession on payment of the debt. (*Charpie v. Stout*, 88 Kan. 318, 128 Pac. 396.)

The right of redemption was originally developed in the courts of equity, which afterwards, with certain modification and extensions, became statutory in our state. (R. S. 60-3438 *et seq.*) It is well settled and conceded by the appellant that the right of possession, use and occupancy of the premises during the statutory period of redemption cannot be abridged by any stipulation or agreement contained in the original mortgage. (*Capitol B. & L. Ass'n v. Ross*, 134 Kan. 441, 7 P. 2d 86, and cases there cited.) In this case no claim is made for the rent after the sale, which is the beginning of the redemption period. The question we have for consideration is whether the mortgagee is entitled to the rent from the date of demand, which was made after default, until the date of sale.

The right of possession cannot be made to depend upon future contingencies, such as default in payment, and rents and profits during the redemption are included in the right of possession. (*Capitol B. & L. Ass'n v. Ross*, supra.) Nevertheless there does not appear to be any statute prohibiting the pledging of rents and profits accruing from the mortgaged premises to secure the payment of the mortgage debt. The pledge is a part of the mortgage and will only be enforced in accordance with the law relating to the fore-

closure of mortgages. The mortgagee is not entitled to the benefit of the contract until he reduces the rents to his possession or control by proper action in the court. This may be done through a receiver (R. S. 60-1201) or any other proper action. This question is extensively annotated in 4 A. L. R. 1405 and 55 A. L. R. 1020. The author of the annotation states his conclusion as follows:

"It is generally held that a mortgagee acquires no rights to the rents and profits until some action to reduce them to possession has been taken by him, even where the mortgage provides for the appointment of a receiver to collect the same in event of default." (p. 1022.)

In *First Nat. Bk. v. Security T. & S. Bk.*, 191 Ia. 842, 844, the court said:

"It is the law in this state, in harmony with the general holding, that the right of the holder of a mortgage upon real estate, pledging the rents and income as security to the defendant for the same, does not arise until action has been commenced to enforce collection of the debt."

In 41 C. J. 628 the author says:

"It is competent for the parties to agree that the rents shall be collected by the mortgagee or a trustee and applied in reduction of the debt secured by the mortgage, and the mortgage may be so drawn as to pledge the rents and profits specifically as security, in which case they become, equally with the land, a primary security; and mortgages also frequently contain clauses assigning the rents to the mortgagee. Unless acted upon by the parties such provisions do not become effective, however, until the mortgagee actually obtains possession, or until he asserts his rights by securing the appointment of a receiver or impounding the rents and profits pending foreclosure, or taking some action equivalent thereto."

In *Caldwell v. Alsop*, 48 Kan. 571, 29 Pac. 1150, the mortgage in question provided that upon default in payment the mortgagee should receive the rents, issues and profits from the land. The mortgagor leased the land to another and received as rent a share of the crop. Default was made in payment before the rent was due. The crop had fully matured. The mortgagee claimed the rent. In the opinion the court said:

"The mortgagees obtained no estate in the mortgaged lands. Under our statutes their mortgage was a mere security for a debt, and the mortgagor was entitled to the possession and use of the premises and to the crops grown thereon until his right was divested by appropriate judicial proceedings. The title to the land remained in the mortgagor, and his right to control and dispose of the annual crops remained in him at least until the receiver obtained possession. The fact that the mortgage debt was due and that the mortgagor was in default did not of itself divest him of the right to control and dispose of the crops. The corn grown on the land was chattel property,

which the mortgagor had a right to sell, and having sold the same prior to the appointment of the receiver, the purchaser obtained a good title." (p. 573.)

Reason and authority lead us to the conclusion that the mortgagee is not entitled to the benefits of the contract for the rents and profits of the land until he has, by appropriate proceedings through the courts, taken the possession and control of such rents and profits. An appropriate remedy is through a receiver. It, however, does not necessarily follow that this is the only remedy. Any proper procedure which would empower the court to control the rents and profits would be sufficient to vest the mortgagee with the title thereto, which must, of course, be applied on the mortgage indebtedness.

In this case suit was filed to foreclose the mortgage August 15, 1931. On August 13, 1931, a demand was made on the tenants in possession of the premises for the rent. The petition was amended August 21, 1931, in which it was alleged that the parties had entered into a stipulation that Willard M. Glasco should collect and hold the rents until the rights of the parties were determined. There seems to be no question but that such an agreement was made, and it had the practical effect of the appointment of a receiver by the court. At least we presume that had the agreement not been made a receiver would have been appointed. This was a subject on which the parties had the right to agree. We hold that the demand on the tenants for the rent was not sufficient to establish the appellant's right thereto; that such right can only be established through a proper court procedure. In view, however, of the agreement made between the parties the court holds that the rents in the hands of Glasco should be paid to the appellant and the proper credit given therefor on the mortgage indebtedness.

It is contended that the court erred in its conclusion that the bondholders must bear the loss, if any, with respect to the payment of $167.31 to the Guarantee Title and Trust Company, which had become insolvent before distribution of the fund had been made to the bondholders. In other words, it is contended that the payment of the money to the trust company did not constitute a payment on the indebtedness, but was merely a deposit. The solution to this question is found in the construction of the instrument. The note is made payable at the office of the trust company. The names of the bondholders are not disclosed. The company is the trustee. The trustee has the power, on payment of the indebtedness, to release

and discharge the mortgage lien, and, in event of default, to maintain an action to foreclose the mortgage. It is more than a depository. It is in fact the plaintiff in this case. The bondholders are not parties. They are relying upon the terms of the instrument vesting the trustee with the power to enforce the obligation. It hardly seems consistent to permit the trustee to maintain an action to enforce collection and at the same time charge the mortgagor with the failure of the trustee to distribute the fund to the bondholders. In the case of *McCormick v. Johnson,* 134 Kan. 153, 4 P. 2d 421, this court held that the payment of the fund to the trustee relieved the mortgagor of the responsibility of the distribution of the fund. While the language of the trust deed in the case cited is much stronger with reference to payment than the language contained in the trust deed under consideration, yet there is a similarity in the two instruments and they attempt to reach the same end. It appears that the plain intent of the parties was to vest the trustee with the power to receive payment and to make distribution thereof. Under such circumstances we are compelled to hold that the payment of the money to the trustee relieved the mortgagor from further responsibility, and that the bondholders must look to the trustee for the distribution of the fund.

It is further contended that the court erred in refusing to allow reasonable compensation to the trustee for the discharge of its duties. The mortgage provided for the payment of attorney fees, expenses and disbursements incurred by the trustee in the discharge of its duty out of the trust estate. The instrument under consideration, as we have already seen, is a mortgage, although designated a trust deed, and is controlled by the statutes relating to mortgages. It is conceded that the statute (R. S. 67-312) prohibits the payment of attorney fees, but contended that compensation to the trustee does not come within the terms of the statute. The code of civil procedure (R. S. 60-3107) provides that in an action to foreclose a mortgage judgment shall be rendered for the amount thereof, with interest thereon, and that the court shall tax the costs and expenses which may accrue in the action. This statute appears to limit the power of the court in the foreclosure of a mortgage to render judgment only for the amount due under the mortgage obligation, plus costs and expenses of the action. The trustee was not an officer of the court, and consequently fees allowed it do not come within the terms of the statute. Compensation to it is not

cost and expenses accruing in the action. It seeks compensation for its services as trustee and it would be contrary to the spirit and letter of the statute to permit the court to enlarge the contractual obligation created by the bond or note and allow the trustee compensation for its service in the performance of the trust. The court properly refused to allow compensation to the trustee.

The judgment of the district court is reversed on the question of the disposition of the rents in the hands of Willard M. Glasco, and it is directed to render a judgment directing the payment of the fund accruing from the rent to the plaintiff, which sum shall be credited on the judgment. In all other respects the judgment is affirmed.