In re **FOXHILL PLACE ASSOCIATES, Debtor.**

Bankruptcy No. 87–00649–1–11.

United States Bankruptcy Court, W.D. Missouri, W.D.

Sept. 28, 1990.

---

Steven C. Block, Kansas City, Mo., trustee for debtor.

Timothy J. Sear, Kansas City, Mo., for Kroh Brs. Development Co., Debtor.

Charles Horner and Price Sloan, Kansas City, Mo., for William R. Riley and William C. Hanes.

Kenneth Jones and Patricia L. Wilson, Kansas City, Mo., for Travelers Ins. Co.

## MEMORANDUM OPINION AND ORDER APPROVING SETTLEMENT AGREEMENT

KAREN M. SEE, Bankruptcy Judge.

The only issue before the court is whether a proposed settlement agreement for division of post-petition rents between debtor Foxhill Place Associates and secured creditor Travelers Insurance Company is reasonable. William R. Riley and William

C. Hanes, limited partners of debtor, objected to the settlement. The limited partners contend that Travelers' security interest in rents is not duly perfected and that Travelers is not entitled to any rents collected by debtor post-petition. This court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2). For the following reasons, the limited partners' objection is overruled and the settlement agreement is approved as being reasonable and in the best interests of the estate.

## FACTS

Debtor Foxhill executed a promissory note to Travelers on December 12, 1985. The note was secured by a mortgage on an office building and a separate agreement for assignment of rents, both recorded in the Johnson County, Kansas Recorder's Office on December 12, 1985, more than a year before the Chapter 11 filing.

The agreement for assignment of rents granted Travelers a security interest in all leases and rents and provided the assignment would not be exercised unless and until a default occurred, as defined under the mortgage. The parties agree that debtor has been in default since October 1, 1986, before the bankruptcy case was filed. Debtor has not contested the validity of the assignment of rents or challenged its liability under the assignment agreement.

On February 13, 1987, debtor filed a Chapter 11 petition. Six months later, on August 13, 1987, Travelers filed a motion for segregation and accounting of cash collateral, prohibition of use of cash collateral and relief from the automatic stay. Relief from the stay was requested so that Travelers could foreclose on its mortgage and assignment of rents. The request for ter-

mination of the automatic stay was granted by this court's order entered November 4, 1987. After the stay was terminated, Travelers applied in state court for a receiver, and on February 24, 1988, a receiver was appointed.

After termination of the stay in bankruptcy court and appointment of the receiver in state court, debtor filed a motion seeking valuation of the cash collateral in rents collected by debtor after commencement of the Chapter 11 case. In the valuation motion, debtor admitted that Travelers held a perfected lien under the assignment of rents executed by debtor to Travelers. Debtor's motion requested the court to: 1) find that Travelers' secured claim is $211,-909.06; 2) that rents collected from February 13, 1987, the date debtor filed bankruptcy, to August 13, 1987, the date Travelers filed its motion for sequestration, are not subject to Travelers' lien; 3) that rents collected from August 13, 1987, the date of the motion for sequestration, to February 24, 1988, the date a receiver was appointed after the automatic stay was terminated, are subject to Travelers's lien; and 4) that rents in an escrow account, which were withheld by a tenant from January 1987 to the time of the valuation motion, are subject to Travelers' lien. The exact value of the rents is undetermined but the limited partners contend that Travelers would receive full payment for its secured claim totalling approximately $211,000.

Prior to a hearing on the valuation motion, debtor and Travelers reached a settlement on the value of the assignment of rents and the division of the rents between debtor and Travelers. The written agreement was not submitted to the court.[1] Un-

---

1. The terms of the proposed settlement, as set forth in Travelers' brief, are summarized as follows:

   a. The rents and revenues from the real property known as the Foxhill Place Office Building collected on and after August 13, 1987, plus the $13,156.30 collected by Travelers prior to the filing of the debtor's bankruptcy case, which total $398,191.45, constitute cash collateral upon which Travelers has a lien, of which amount of $258,747.08 was spent in operating the property, leaving $139,444.45 subject to Travelers' lien.

   b. Also constituting cash collateral subject to Travelers' lien is the amount of $5,668.35, which represents interest on Travelers' cash collateral through April 30, 1988, plus $21.39 per day thereafter until payment is made to Travelers of the amount set forth in paragraph 1 above.

   c. That portion of the rents held in escrow by tenant Shamberg, Johnson, Berman & Goldman, Chartered ("Shamberg") equal to $72,-464.61, plus one-half of the interest earned on such rents while in escrow, also constitute cash collateral subject to Travelers' lien.

der the terms of the settlement agreement, Travelers agreed to waive any claim to rents collected by debtor from the date of bankruptcy to August 13, 1987, the date of its motion for sequestration of rents, prohibition of use of cash collateral, and termination of automatic stay. Debtor agreed to give Travelers the rents it collected from August 13, 1987, the date of the motion for sequestration, to February 24, 1988, the date the receiver was appointed after the stay was terminated. Thus, the rents in question are those collected by debtor post-petition from August 13, 1987 to February 24, 1988, totalling approximately $217,577.41, plus interest. The limited partners object to the terms of the settlement agreement on the ground that Travelers is not entitled to any post-petition rents until the time the receiver was appointed after the termination of the automatic stay because Travelers allegedly did not have a perfected security interest in rents at the time the bankruptcy case was filed or thereafter until the receiver was appointed.

## ASSIGNMENT OF RENTS GENERALLY

The controversy surrounding a creditor's interest in an assignment of rents has received significant attention from both commentators and courts. The controversy arises as a result of an interplay between state law and the Bankruptcy Code and the imprecise use of certain terms in the cases addressing the issue. It is critical in the assignment of rents analysis to use the proper terminology. In analyzing the creditor's right to the rents in situations such as presented here, the term "enforcement" of the creditor's rights in the rents should be used rather than "perfection" of a creditor's security interest, as noted in *In re Greenhaven Village Apartments of Burnsville*, 100 B.R. 465, 468–69 (Bankr.D.Minn.1989).

In *Greenhaven*, a creditor brought an adversary proceeding requesting the bankruptcy court to determine that it had a valid perfected security interest in rents from debtor's property. The bankruptcy court held that an assignment of rents recorded by the creditor pre-petition gave the creditor a superior interest in the rents over the debtor and that the creditor had a right to enforce his lien rights post-petition. By way of introduction to its analysis, the court recognized that an inconsistency existed in the district over the use of the term "perfected security interest", as opposed to the term "enforcement". *Id.* at 467. *Greenhaven* noted that in one Minnesota case the bankruptcy court held that a creditor must take some steps beyond mere recording of an assignment of rents to establish a perfected security interest in the rents, and that if this action was not taken pre-petition then the creditor's interest could be avoided by the debtor in possession. *In re Metro Square*, 93 B.R. 990 (Bankr.D.Minn.1988), *rev'd*, 106 B.R. 584 (D.Minn.1989). On appeal to District Court, the bankruptcy court's holding as to the date of perfection was reversed. In another Minnesota case, *Greenhaven* noted, the bankruptcy court held a creditor had a perfected security interest in rents when the assignment of rents was recorded in the county recorder's office pre-petition. The court also held that this creditor was entitled to enforce his security interest in the rents post-petition. *In re Pavilion Place Assoc.*, 89 B.R. 36 (Bankr.D.Minn. 1988). *Greenhaven's* review noted that this later position has been adopted by the District Court in Minnesota in *New York Life Ins. Co. v. Bremer Towers*, 714 F.Supp. 414 (D.Minn.1989); *accord In re Metro Square*, 106 B.R. 584 (D.Minn.1989).

Thus, the term "perfection" should not be used synonymously with the term "enforcement." As explained in *Greenhaven*, "perfection" when used in connection with the term "security interest," means the process by which the security interest achieves a status where it cannot be avoided by an intervening third party. A securi-

---

d. Debtor releases and waives any claim it may have against Travelers with respect to rents collected by Travelers.

e. Travelers releases and waives any claim it may have that rents and revenues collected and Shamberg rents which accrued prior to August 13, 1987, are subject to its lien.

ty interest which has been so protected is "perfected." Use of the term "perfected" in Article 9 of the Uniform Commercial Code denotes action by a creditor "which would put a diligent searcher on notice of the secured party's claim." White & Summers, *Uniform Commercial Code* § 24–7, p. 328 (3rd ed. 1988). Recording of the assignment of rents prior to bankruptcy accomplishes the task of putting a searcher on notice pursuant to Kan.Stat.Ann. § 58–2221.

■ "Enforcement", on the other hand, describes the process that a creditor takes to realize or possess the collateralized property, which, under an assignment of rents, is the rent revenues. The process of "enforcement" should not be confused with "perfection". *Greenhaven*, 100 B.R. at 469. In other words, the threshold inquiry in analyzing a creditor's rights under an assignment of rents is whether the creditor had a security interest under state law which was duly perfected prior to bankruptcy, followed by a determination of whether the security interest continued post-petition, and concluding with a determination of whether it is enforceable post-petition.

## ASSIGNMENT OF RENTS AND KANSAS LAW

■ Before a creditor can enforce its security interest in rents post-petition, the security interest must be enforceable under applicable state law. Kansas law controls this question. *Butner v. United States*, 440 U.S. 48, 57, 99 S.Ct. 914, 919, 59 L.Ed.2d 136 (1979). Debtor, in its motion for valuation, admitted that Travelers' recorded assignment of rents created a perfected security interest in rents. However, whether Travelers' security interest was perfected was one of the issues raised in the limited partners' objection to the settlement, although the limited partners do not define what constitutes perfection of an assignment of rents under Kansas law.

■ Under Kansas law, a creditor perfects its security interest in rents by recording the assignment of rents with the recorder of deeds. The creditor's later action after default to obtain the rents constitutes enforcement of the security interest, not perfection. *In re Cherry Creek*, No. 89–10481, slip op. at 10 (Bankr.D.Kan.1990) (Judge Pearson);[2] *see also Federal Home Loan Mortgage Corp. v. Nazar*, 100 B.R. 555, 558 (D.Kan.1989) (recording of loan documents with assignment of rents provision is perfection). Thus, the agreement for assignment of rents, executed and recorded in 1985, more than a year before the bankruptcy case was filed, perfected Travelers' security interest in rents under Kansas law prior to the filing of the bankruptcy case. Due to the scant case law construing Kansas law, it is appropriate to review the laws of other states, which review shows that Kansas law on the time of perfection is the same as in other states. *U.S. v. Landmark Park & Assoc.*, 795 F.2d 683, 687 (8th Cir.1986); *In re Centre of Missouri Limited*, 116 B.R. 138 (Bankr.E. D.Mo.1990); *New York Life Insurance Co. v. Bremer Towers*, 714 F.Supp. 414, 416–17 (D.Minn.1989); *In re Metro Square*, 106 B.R. 584 (D.Minn.1989); *In re Greenhaven Village Apartments of Burnsville*, 100 B.R. at 467; *In re Porter*, 90 B.R. 399, 404 (N.D.Iowa 1988) (recording of mortgage with assignment of rents provision is perfection).

As to the issue of enforcement, various states have taken different approaches to determine what steps a creditor must take to enforce his security interest in rents under a perfected assignment of rents. Some states hold that upon default the assignment of rents grants the creditor an absolute right to the rents without requiring further action. *In re Aloma Square, Inc.*, 85 B.R. 623 (Bankr.M.D.Fla.1988). Other states hold that a creditor's right to rents becomes effective when the creditor takes some action to perfect its interest in

**2.** Unpublished opinions are not generally cited as authority. However, *Cherry Creek* is cited with favor herein because there is a dearth of Kansas cases interpreting state law on these issues, and *Cherry Creek*, which was written by a Kansas judge and construes Kansas law, is precisely on point on both law and facts.

the rents. *In re Fluge*, 57 B.R. 451 (Bankr. N.D.1985). A creditor's action was held to be equivalent to possession when, after default, the creditor established an office at the shopping center, collected rents from the tenants, and paid the shopping center's expenses. *Pine Lawn Bank & Trust Co. v. MH & H, Inc.*, 607 S.W.2d 696 (Mo.App. 1980). Finally, some states hold that a creditor must take actual possession or obtain appointment of a receiver to enforce its security interest in rents. *See Matter of Gotta*, 47 B.R. 198 (Bankr.D.Wis.1985). *In re Centre of Missouri Limited*, 116 B.R. 138, 141 (Bankr.E.D.Mo.1990) a recent case construing Missouri law, which is similar to Kansas law, holds that a mortgagee is entitled to rents upon default if (a) the parties agree; (b) the mortgagee enters into possession of the property; or (c) the mortgagee takes some equivalent action tantamount to possession.

These cases serve as an illustration of the varying ways creditors can enforce a security interest in rents under various states' laws. Determination of Travelers' rights in the present case is controlled by Kansas law. *See Butner v. United States*, 440 U.S. 48, 57, 99 S.Ct. 914, 919, 59 L.Ed.2d 136 (1979).

Kansas is a lien theory state. Kan.Stat. Ann. § 58–2301 (1983); *Missouri Valley Investment Co. v. Curtis*, 12 Kan.App.2d 386, 745 P.2d 683, 685 (1987). In a lien theory state, the mortgage does not vest the mortgagee with title to the mortgaged property, but instead, gives the mortgagee only "a lien securing the indebtedness described in the [mortgage]." *Hall v. Goldsworthy*, 136 Kan. 247, 14 P.2d 659, 660 (1932); *Mid–Continent Supply Co. v. Hauser*, 176 Kan. 9, 15, 269 P.2d 453 (1954).

■ Similarly, under Kansas law, an assignment of rents creates a perfected security interest and lien when properly recorded, but it is not enforceable until the creditor has taken steps which entitle the creditor to enforce it lien rights. This enforcement may be by an agreement between the parties that the creditor may collect rents after default or by the creditor

obtaining the appointment of a receiver. *Kershaw v. Squier*, 137 Kan. 855, 857, 22 P.2d 468 (1933); *See also Missouri Valley*, 745 P.2d at 685. However, formal appointment of a receiver is not the only way a creditor can obtain possession of the rents. In *Hall*, 14 P.2d at 661–62, the court noted that "any proper procedure which would empower the court to control the rents and profits would be sufficient to vest the mortgagee with title thereto...." The court went on to hold that since the parties had agreed that the mortgagee would hold the rents, such action had the effect of the appointment of receiver. *Hall*, 14 P.2d at 662.

■ Thus, under cases such as *Hall* and *In re Centre Missouri Limited*, the creditor can enforce its right to receive the rents under several circumstances, including: if the parties have agreed that the creditor can collect the rents upon default; the creditor has obtained appointment of a receiver; the creditor has taken possession; or the creditor has taken some action which is equivalent to possession. Here, Traveler's filing of the motion to sequester rents was an sufficient action equivalent to the taking of possession of the property to allow enforcement of the lien on rents.

■ Therefore, under Kansas law, as *Cherry Creek* and the above cases demonstrate, there is no question that Travelers had a security interest and lien in debtor's rents that was both properly perfected on the date of bankruptcy and generally enforceable. Travelers' lien was perfected on December 12, 1985 when Travelers recorded the written assignment containing a security agreement pertaining to the rents.

### ASSIGNMENT OF RENTS AND THE BANKRUPTCY CODE

The limited partners argue that Travelers is not entitled to any of the rents prior to appointment of the receiver on February 24, 1988 (after the automatic stay was terminated) because Travelers did not take steps to perfect its interest in the rents until the receiver was appointed. This argument is without merit since it has al-

**714**

ready been held that Travelers' interest was not perfected post-petition, but rather was perfected pre-petition in December, 1985 when the assignment of rents with security agreement was recorded. The only remaining questions are whether Travelers' security interest in rents continued post-petition and whether Travelers was entitled to enforce it.

■ The pre-petition security interest in Foxhill Office Building rents continued post-petition under 11 U.S.C. § 552(b). Although a security interest in property acquired after commencement of the case is generally not subject to a continuing lien, § 552(b) expressly provides that a perfected pre-petition security in rents and profits does extend to such rents and profits acquired after commencement of the bankruptcy case.

■ The only remaining question is from what date Travelers may enforce the security interest and claim the rents and profits. The settlement agreement between Travelers and debtors provides for Travelers to receive rents collected after the date of the motion to sequester rents. The court finds this date is appropriate. After the bankruptcy case was filed and the automatic stay was imposed, the motion to sequester rents, prohibit use of cash collateral and terminate the automatic stay was the only action Travelers could take to evidence an intent to take possession or in lieu of actually taking possession. The filing of the motion for sequestration constituted an act of enforcement within the confines of the automatic stay. *In re Centre of Missouri Limited*, 116 B.R. 138, 141 (Bankr.E.D.Mo.1990). In any event, whether the rents could be claimed only when the receiver was actually appointed or at the earlier date of the motion for sequestration was a disputed issue in regard to which the court finds the settlement reasonable and in the best interest of the estate, in order to avoid the substantial expense of further litigation.

### 11 U.S.C. § 546 AND THE RELATION BACK DOCTRINE

The parties also discussed whether it was possible to perfect a security interest in rents post-petition and have it relate back to a time pre-petition under § 546(b). Since the court has found that Travelers' security interest in rents was duly perfected prior to commencement of the bankruptcy case, it is not necessary to discuss any relation-back issues under § 546(b). Moreover, since the parties' settlement agreement provides that debtor will receive post-petition rents until the date of the motion for sequestration and that Travelers will receive only rents accruing after that date, the agreement does not provide any relation-back issues.

Accordingly, for the foregoing reasons it is hereby

ORDERED that the limited partners objection to the proposed settlement agreement is overruled; and it is further

ORDERED that the settlement agreement between debtor and Travelers' is approved as reasonable and in the best interests of the estate.