IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,712

FAIRFAX PORTFOLIO LLC,
*Appellant*,

v.

CAROJOTO LLC, ROSANA PRIVITERA BIONDO,
ANTHONY L. PRIVITERA II, and CARL PRIVITERA,
*Appellees.*

SYLLABUS BY THE COURT

1.

Generally, the mortgagor of real property may retain the possession thereof.

2.

A holder of a real estate mortgage cannot, even after condition broken, take possession of the mortgaged property, except by post-default consent of all the parties, acquiescence, or court action.

3.

The mortgage instrument alone is unable to provide authority for a lender to take possession of real estate upon the event of potential future default.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 1, 2019. Appeal from Wyandotte District Court; CONSTANCE M. ALVEY, judge. Opinion filed September 11, 2020. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.

*Douglas J. Patterson*, of Property Law Firm, LLC, of Leawood, was on the brief for appellant.

1

*Christopher J. Sherman* and *Jon W. Gilchrist*, of Payne & Jones, Chartered, of Overland Park, were on the brief for appellees.

The opinion of the court was delivered by

WILSON, J.:  This case is about the enforceability of a mortgage clause that grants to mortgagee/lender the right to immediate and exclusive possession of the mortgaged property upon the event of the mortgagor/borrower's future default. In reliance on such a clause, the current mortgagee took possession of the property to the exclusion of the mortgagor. The mortgagor objected to the takeover, but the mortgagee did not relinquish the property. While in possession, the mortgagee filed a foreclosure action and was granted judgment in its favor. The mortgagor—Fairfax Portfolio LLC (Fairfax)—then filed the suit now before us against the mortgagee—Carojoto LLC, Rosana Biondo, Anthony Privitera II, and Carl Privitera (collectively Carojoto)—claiming that Carojoto's possession of the property, before a court order authorized it, was wrongful and caused recoverable damages.

FACTS AND PROCEDURAL HISTORY

Fairfax was the owner of about 300,000 square feet of commercial real estate in Wyandotte County which included industrial warehouse space, offices, and loading docks. This ownership was subject to debt evidenced by a promissory note secured by a mortgage on the real estate. Through a series of transactions, Carojoto acquired the note, mortgage, and other related loan documents. It is undisputed that when Carojoto acquired ownership over the debt, Fairfax was in default under the terms of the note.

Without warning to Fairfax, Carojoto took possession of the property in June 2012. Upon learning of the takeover, Fairfax objected and demanded the property's return

2

so Fairfax could continue its efforts to rent it and pay off the debt. Carojoto refused to budge. Instead, Carojoto launched its own marketing efforts to lease the property.

While Carojoto was still in possession, they filed a mortgage foreclosure action in Wyandotte County District Court, and in February 2013, the court entered a judgment and order allowing Carojoto to commence a sheriff's foreclosure sale on the property. Carojoto made a credit bid of just over $4 million, thereby acquiring ownership of the property for itself.

Just over a year later, Fairfax filed this action against Carojoto, claiming that Carojoto improperly took possession of the property prior to the foreclosure action and caused Fairfax damages. Carojoto filed a motion to dismiss, arguing it had the right to take possession of the property in the event of default, because the remedies portion of the mortgage (Paragraph 10.1) reads in pertinent part:

> "Upon the occurrence of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender: . . . (g) enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom[,] . . . and thereupon Lender may exercise all rights and powers of Borrower with respect to the Property."

Carojoto further claimed the remedies clause was strengthened by the alleged vacancy of the property at the time Carojoto took possession of it.

The district court granted Carojoto's motion to dismiss on the basis of the mortgage remedies provision, Fairfax's default, and the fact the property was vacant. Fairfax appealed. A Court of Appeals panel reversed the district court's decision, holding that Carojoto's reliance on the provisions of executory agreements is unsupported by Kansas law and the facts do not support an exception. *Fairfax Portfolio, L.L.C. v. Carojoto, L.L.C.,* No.118,712, 2019 WL 986149, at *6 (Kan. App. 2019).

ANALYSIS

*Standard of Review*

The standard of review turns on what the trial court considered when granting Carojoto's motion to dismiss. When, as in this case, matters outside the pleadings were considered by the court, the appropriate standard of review is the same as that for summary judgment.

K.S.A. 2019 Supp. 60-212(d) states:

"Result of presenting matters outside the pleadings. If, on a motion [to dismiss] under subsection (b)(6) or (c), matters outside the pleadings are presented to and not excluded by the court, *the motion must be treated as one for summary judgment under K.S.A. 60-256*, and amendments thereto. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." (Emphasis added.)

Our standard for reviewing an order granting summary judgment is de novo, and:

"'"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may

4

reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citations omitted.]'" *Hansford v. Silver Lake Heights,* 294 Kan. 707, 710-11, 280 P.3d 756 (2012).

Our review over the interpretation and legal effect of written instruments is unlimited, and we are not bound by the lower courts' interpretations of those instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

DISCUSSION

This case prompts us to look at one of the earliest statutes in Kansas, which by and large remains unaltered to this day. K.S.A. 58-2301—just seven years younger than the state of Kansas—holds clearly: "In the absence of stipulations to the contrary, the mortgagor of real property may retain the possession thereof." Likewise, even the earliest Kansas real estate cases, which lay the foundation for the nature of the relationship between mortgagor/borrower and mortgagee/lender, make it clear that the borrower retains possession of the mortgaged property.

"In this State, a clean sweep has been made by statute. The common law attributes of mortgages have been wholly set aside; the ancient theories have been demolished[] . . . . The statute gives the mortgagor the right to the possession, even after the money is due, and confines the remedy of the mortgagee to an ordinary action and sale of the mortgaged premises; thus negativing any idea of title in the mortgagee. It is a mere security, although in the form of a conditional conveyance; creating a lien upon the property, but

5

vesting no estate whatever, either before or after condition broken. *It gives no right of possession, and does not limit the mortgagor's right to control it—except that the security shall not be impaired.* He may sell it, and the title would pass by his conveyance— subject, of course, to the lien of the mortgagee." (Emphasis added.) *Chick et al. v. Willetts*, 2 Kan. 384, 391, 1864 WL 445 (1864).

This court continued to reiterate the same principles of Kansas mortgages for decades:

"In this state a real-estate mortgage conveys no estate or title, in whatever form the mortgage may be drawn; it creates only a lien upon the mortgaged property. And such lien can be enforced only by a judgment or order of the district court. *A holder of a real-estate mortgage cannot, even after condition broken, take possession of the mortgaged property*, or of the rents or profits thereof, except by consent of all the parties, or by an action in the district court; and he cannot realize upon his mortgage except by judgment of such court. *And this is true, whatever the form of the mortgage may be*. Even if it were in form a deed absolute, still in its nature and character it would be only a mortgage.

"Where the mortgaged property is not a sufficient security for the mortgage debt, the district court may in some cases appoint a receiver to take charge of the mortgaged property, and to receive the rents and profits thereof, but *in no case* can the holder of the mortgage, without suit, and without the consent of the mortgagor or his assignee, take possession of either the real estate mortgaged, or the rents or profits thereof." (Emphases added.) *Seckler v. Delfs*, 25 Kan. 159, 165, 1881 WL 794 (1881).

Using this established law, Fairfax specifically relies in part on *Kelso v. Norton*, 65 Kan. 778, 70 P. 896 (1902), to support the claim that any possession by Carojoto prior to the foreclosure action was wrongful. In that case, Kelso owned land that he sold to Mr. and Mrs. Norton who paid a down payment and signed two promissory notes for the balance. The Nortons also signed a mortgage securing the unpaid balance. The Nortons subsequently failed to pay taxes or anything toward the notes. Kelso filed suit and the court granted Kelso judgment for the unpaid amounts and foreclosure of the mortgage.

6

The sheriff sold the property to Kelso, who paid the costs of the suit and the three years of taxes that were owed. Kelso recovered possession of the land, received rents and profits from it, and continued to pay taxes on it.

A few years later, Mr. and Mrs. Norton died intestate, leaving two minor children. The Norton children filed suit to remove Kelso and recover the land. Because of a technical defect in the summons, the trial court found the notes and mortgage never merged into a valid judgment, and so recovery of the land was granted to the Norton heirs. Kelso appealed.

The *Kelso* court confirmed the general rule that a mortgagee has no possessory rights absent valid court order, but also found an exception to that general rule. The mortgagor's right to retain possession could be waived by their consent or acquiescence. 65 Kan. at 782-83. The court held:

> "At common law, a mortgagee was entitled to possession and to recover possession from the mortgagor upon condition broken. In this state, by force of statute, a mortgage retains but few, if any, of its common-law attributes. It is a mere security contract, incident to the debt. The mortgagor, both before and after default, is entitled to the possession of the premises. The only legal right of the mortgagee is to foreclose the equity of redemption and obtain a decree of sale in satisfaction of his debt. While such are the legal rights of the mortgagor and mortgagee in this state, it does not follow that these legal rights may not be changed or waived by agreement, express or implied. If the mortgagor consents to the mortgagee's taking possession of the premises for the better-security of his debt, and the mortgagee does take possession, it is clear the possession thus taken will constitute 'a mortgagee in possession.'" 65 Kan. at 782-83.

Fairfax argues that its objection to Carojoto changing the locks and its continued efforts to secure remedies for the unpaid debt demonstrate that it had not waived its legal right to possession of the mortgaged premises. Carojoto argues that the mortgage, in

7

Paragraph 10.1, provides the "express consent" contemplated by *Kelso* and the necessary waiver for it to take possession, even prior to the foreclosure action.

Both the panel and Fairfax rely on a Court of Appeals case to dismiss the idea that the mortgage contract can provide that consent. In *Hoelting Enterprises v. Trailridge Investors, L.P.*, 17 Kan. App. 2d 777, 884 P.2d 745 (1993), the relevant mortgage had a provision that upon default, Hoelting—as lender—was entitled to immediate possession of the property and rents. The specific issue on appeal was entitlement to the rents received between default and sale confirmation. The panel in that case ultimately ruled that Hoelting was not entitled to possession of the property and rents based on the mortgage agreement alone, but that the assignment of rents vested when Hoelting filed the foreclosure action:

> "Under Kansas law, therefore, a purely executory agreement alone is not effective to vest in a mortgagee the right to rents and profits. The right to rents and profits may vest in a mortgagee, however, if (1) the mortgagor defaults and the court appoints a receiver, or (2) the mortgage assigns the rents and the mortgagee reduces the rents to his possession by proper legal action. [Citations omitted.]" 17 Kan. App. 2d at 783.

In *Hall v. Goldsworthy*, 136 Kan. 247, 14 P.2d 659 (1932), the court focused on a collateral issue of entitlement to rents and profits, as opposed to possession, after default on a mortgage. However, before turning its attention to the central issue, the court "set the stage" by cohesively summarizing the law as it applied to mortgage clauses that ostensibly allow mortgagee possession upon the potential occurrence of a future default. It stated:

> "The mortgagor is entitled to retain possession of the mortgaged property in the absence of a stipulation to the contrary. (R. S. 67-301.) [now K.S.A. 58-2301]. This statute was adopted in 1868 and its evident purpose was to entirely eliminate the attributes of the common-law mortgage. The possession contemplated in this statute necessarily applies to

the immediate possession and occupancy of the premises. *It was not intended to authorize a contract for the possession of the premises upon any future contingency*, such as default in payment or failure to pay taxes. In other words, *if the mortgagee desires the possession of the premises such possession must be obtained and voluntarily consented to by the mortgagor. It cannot rest upon the happening of some future event. It has been held that stipulations in the mortgage instrument for possession of the mortgaged property upon default are of no avail to the mortgagee*. [Citation omitted.]" (Emphases added.) 136 Kan. at 249-50.

Kansas precedent is clear that the mortgage instrument alone is unable to provide the express consent necessary for a lender to take possession of real estate prior to a valid court action. Although it may intuitively run contrary to the freedom to contract, Kansas established in its infant years that the right of a borrower to retain possession—even in default—is paramount. Therefore, any language in the mortgage agreement between Carojoto and Fairfax which would give Carojoto the ability to take possession of the property is simply unenforceable in light of this court's historical interpretation of K.S.A. 58-2301.

Secondarily to this contract-based claim, Carojoto cites a more narrow set of circumstances under which it purports to have taken possession lawfully. "If, after condition broke, the premises are unoccupied, the mortgagee may, if he can do so peaceably, enter into the possession under his mortgage; and he cannot be ejected therefrom by the owner until his mortgage lien has been fully satisfied." *Walters v. Chance*, 73 Kan. 680, 686, 85 P. 779 (1906).

But as the panel points out in distinguishing that case, *Walters* considered property abandoned for a number of years before the lender quietly and peaceably came into possession of it. See *Fairfax,* 2019 WL 986149, at \*5-6. There is nothing similar in the

present facts. Rather, after apparently being ousted, Fairfax promptly expressed its objection to Carojoto upon discovering the unexpected possession.

The Court of Appeals panel was correct. We find no support in our law for Carojoto's reliance on the provisions of the executory agreements. The facts do not support an exception arising from either express or implied consent by Fairfax after default. Carojoto needed first to file its action in the district court, *then* seek its remedies for the default. We affirm the decision of the Court of Appeals and remand the case to the district court for further proceedings consistent with this opinion.

MICHAEL E. WARD, Senior Judge, assigned.[1]

* * *

STEGALL, J., concurring: If this were a question of first impression, I would agree with the dissent's articulated statutory interpretation. Given, however, that *Hall v. Goldsworthy*, 136 Kan. 247, 14 P.2d 659 (1932), has been on the books for almost nine decades, I concur in the outcome solely on the grounds of stare decisis. Our commitment to prior holdings of this court should be the strongest in cases of economic reliance, when parties to commercial transactions must know the rules ahead of time. *McCullough v. Wilson*, 308 Kan. 1025, 1036, 426 P.3d 494 (2018) ("'[c]onsiderations in favor of stare decisis are at their acme in cases involving property and contract rights, where reliance interests are involved'"). Stare decisis is further strengthened when the legislative branch

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 118,712 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.

has failed—over a long period of time—to take any action to remedy an erroneous judicial interpretation of one of its statutes. *State v. Quested*, 302 Kan. 262, 278, 352 P.3d 553 (2015) ("The doctrine of stare decisis is particularly compelling in cases where, as here, the legislature is free to alter a statute in response to court precedent with which it disagrees but declines to do so."). For these reasons, I would apply the clear interpretation of K.S.A. 58-2301 articulated by this court in *Hall* to the present case.

\* \* \*

BILES, J., dissenting: K.S.A. 58-2301 straightforwardly provides: "*In the absence of stipulations to the contrary*, the mortgagor of real property may retain the possession thereof." (Emphasis added.) And everyone agrees this mortgage authorizes the lender to take possession of the property if the mortgagor defaults. So the question is pretty simple: Why can't *this* mortgage provision, which the mortgagor expressly conceded to get this loan, be among the "stipulations to the contrary" authorized by K.S.A. 58-2301? The statute's plain language certainly does not exclude possession-upon-future-contingency language expressed in mortgage instruments; but the majority's decision does. In doing so, the majority compromises the statute's terms by adding language limiting the permissible stipulations exclusively to those entered post-default. *Fairfax Portfolio v. Carojoto*, No. 118,712, Syl. ¶¶ 2, 3. The statute doesn't say that. Accordingly, I dissent.

Courts apply the plain language of statutes and avoid adding, deleting, or substituting words. *Kelly v. Legislative Coordinating Council*, 311 Kan. 339, 347, 460 P.3d 832 (2020); *Nauheim v. City of Topeka*, 309 Kan. 145, 149-50, 432 P.3d 647 (2019) ("When the language is plain and unambiguous, the court must give effect to its express language, rather than determine what the law should be. The court will not speculate about legislative intent and will not read the statute to add something not readily found in

11

it."). For more than a decade, this court has made concerted efforts to adhere to that principle. And we have done so even if it meant overruling prior caselaw when earlier courts or a lower court perceived a legislative purpose beyond the statute's plain language. See, e.g., *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 361 P.3d 504 (2015) (overruling prior Supreme Court precedent on workers compensation offset statute); *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 524-27, 154 P.3d 494 (2007) (overruling prior Supreme Court precedent on parallel injury rule in workers compensation); *Graham v. Dokter Trucking Group*, 284 Kan. 547, 556, 161 P.3d 695 (2007) (reversing Court of Appeals for "overlooking the import of this plain language in the statute, [and] instead attempting to divine legislative intent from a review of legislative history").

The majority deviates without explanation from our more deliberate adherence to plain language statutory interpretation. And it makes no effort to reconcile this statute's language with its holdings in Syllabus ¶¶ 2 and 3. To be sure, there is no caselaw directly on point interpreting K.S.A. 58-2301 as the majority does in the present context. Its rationale is nothing less than a bare conclusion that the statute must not mean what it says because prior court cases have said so on their way to deciding some other issue being litigated. We have labored in recent years to go beyond such a superficial approach because the words used by the Legislature should be respected when at all possible.

Take, for example, the majority's citation to *Hall v. Goldsworthy*, 136 Kan. 247, 14 P.2d 659 (1932). The majority touts *Hall* as "cohesively summarizing the law as it applied to mortgage clauses that ostensibly allow mortgagee possession upon the potential occurrence of a future default." Slip op. at 8. But it does no such thing. Setting aside the fact that the passage the majority quotes is dicta because *Hall* dealt with entitlement to rents and profits, not possession, *Hall* did not even discuss the statute's language. Instead, *Hall* made the same analytical misstep we have exposed in *Casco*,

12

*Hoesli*, and other cases by interpreting a statute based on what the court divined as legislative intent—not the statute's plain language. *Hall*, 136 Kan. at 250 ("[K.S.A. 58-2301] *was not intended* to authorize a contract for the possession of the premises upon any future contingency, such as default in payment . . . . It has been held that stipulations in the mortgage instrument for possession of the mortgaged property upon default are of no avail to the mortgagee." [Emphasis added.]).

And when one looks a little deeper into *Hall* where it claims caselaw support for the proposition relied on by the majority, this supposed authority falls apart with very little additional scrutiny. Those cases do not prohibit stipulations in a mortgage instrument for possession of mortgaged property upon default if that possession does not amount to an absolute conveyance or interference with the mortgagor's exercise of redemption rights. See *Citizens' Nat. Bank v. Williams*, 100 Kan. 140, 163 P. 647 (1917) (citing *Beverly v. Barnitz*, 55 Kan. 466, 42 P. 725 [1895]); *Holden Land & Live Stock Co. v. Trading Co.*, 87 Kan. 221, 123 P. 733 (1912); *Williams v. Schrock*, 118 Kan. 347, 235 P. 111 (1925). This makes them analytically noteworthy perhaps, but certainly not conclusive.

My point is fairly basic. To the extent such cases are marginal guides because they tangentially touch on the issue presented as they go on to answer a different legal question, their assertions conflict with K.S.A. 58-2301's plain language. And the majority fails to explain—based on the actual language in the statute—why a mortgage provision for the mortgagee's possession upon default cannot be a stipulation "to the contrary" as that statute provides with respect to the mortgagor's retention of possession. See Black's Law Dictionary 1712 (11th ed. 2019) (defining "stipulation" as "[a] material condition or requirement in an agreement; esp., a factual representation that is incorporated into a

13

contract as a term <breach of the stipulation regarding payment of taxes>"). Appealing instead to "historical interpretation," the majority reforms the statute to add a future-contingency exclusion and ignores the words used by the Legislature. Slip op. at 9.

      For these reasons, I dissent.