YEWELL GRIFFITH, *as Administrator, etc.,* v. ALEXANDRINA ROBERTSON.

No. 14,605. (85 Pac. 748.)

SYLLABUS BY THE COURT.

1. PARENT AND CHILD—*Claim against Parent's Estate for Services—Contract—Proof.* Before a daughter can recover from the estate of her deceased mother for services rendered while residing with, and as a part of, her mother's family, it must be shown that an express contract existed between herself and mother that such services should be paid for. It is not essential that the evidence in support of such express contract shall consist of a ·formal offer and acceptance; it may be established like other disputed facts by any competent testimony.

2. EVIDENCE—*Conversations Had between Deceased and Third Persons.* A daughter or other party prosecuting a claim against the estate of a deceased person is competent to testify· to conversations had between the deceased and a third person in the presence and hearing of the witness.

3. PARENT AND CHILD—*Contract for Personal Services—Recovery.* When a daughter nurses and cares for her mother for several years, including the mother's last sickness, under an express contract that payment for such services will be provided for in the will of her mother, who dies intestate, the daughter may recover the reasonable value of such services from the estate of the deceased mother.

Griffith v. Robertson.

Error from Sumner district court; CARROLL L. SWARTS, judge. Opinion filed May 12, 1906. Affirmed.

*James Lawrence*, and *J. S. Dey*, for plaintiff in error. *W. W. Schwinn*, for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The defendant in error presented a claim against the estate of her deceased mother for personal services, and recovered thereon both in the probate and district courts of Sumner county. The administrator brings the case here for review. The family formerly resided in Scotland, and consisted of George Gunn, his wife, and several children. Three of the adult children came to Kansas, and afterward, in October, 1883, the mother came, leaving her husband and the remaining children in Scotland. Mrs. Gunn owned the land in controversy, and resided thereon. One of her sons lived with her for a time, and later she managed the farm alone, with the aid of hired assistants. In 1895 she sent back to Scotland for her youngest daughter, Alexandrina Gunn, known as Ina, to come and live with her on the farm, and furnished the money for the necessary expenses of the trip. This daughter remained with the mother from the time of her arrival from Scotland until the mother's death, in January, 1904. In 1900 this daughter married Donald Robertson, and they remained with the mother as a part of her family.

At the time Ina came to Kansas she was about twenty-six years of age, and her mother was about seventy. After Mrs. Gunn's death Mrs. Robertson filed a claim against the estate for work and labor performed, a copy of which, without caption or verification, reads:

"Estate of Isabella Gunn, deceased, to Alexandrina Robertson, Dr.:

"To services in caring for deceased from July 1, 1895, to December 1, 1902, at three dollars, under

agreement to make a will providing for payment of full value of claimant's services, $1158.

"To services for nursing deceased on sick-bed from December 1, 1902, to November 24, 1904, at ten dollars per week, under agreement that deceased would make a will and provide for payment at full value of services, $1030.

"Total amount of claim, $2188."

Mrs. Robertson claims that her mother agreed to give her the farm in payment for her services, and that it was the intention of Mrs. Gunn to make a will to that effect, but she postponed it from time to time until it was too late. In the absence of such a will she claims the reasonable value of the services. The plaintiff, being an incompetent witness as to any conversation or transaction had personally by her with her deceased mother, was compelled to rely upon other proof to establish her contract. This difficulty on the part of the plaintiff appears to have been the chief reliance of the defendant, and every possible phase of the question was vigorously contested.

Thirty-three assignments of error are presented to this court, nearly all of which involve some feature of the competency of the plaintiff's evidence. In addition to this it is urged that the plaintiff was permitted to introduce evidence which did not tend to establish the agreement set forth in the account.

For convenience we will consider the last objection first. In our view of the case there was but one serious question at issue, and that was whether the services of the plaintiff were rendered gratuitously. If the mother agreed to pay for them, and failed to do so, the manner in which she intended to make payment is only important as indicating that she did not think they were rendered gratuitously. The administrator claims that as the burden was upon the plaintiff to show that there was an express agreement to pay for the alleged services, and as she has stated the transaction in which such express contract was made, her

Griffith v. Robertson.

evidence must be confined to such transaction. As a question of pleading this is probably correct; but the informal and summary manner which the statutes provide for the disposition of this class of cases suggests the application of a liberal rule of construction, both to the statements of the account and to the admissibility of testimony in support thereof. Therefore, any evidence which tended to show that the mother agreed to pay the plaintiff for her services by the provisions of a will would be proper under the statements of her claim.

The plaintiff, as a witness in her own behalf, testified to several conversations between her mother and sister, which took place in the presence and hearing of the witness. This is the subject of vigorous complaint, on the ground: (1) That the witness is incompetent; and (2) that the evidence does not tend to sustain the account sued upon, which constitutes the plaintiff's pleading. The general scope of the evidence admitted over these objections will be seen by a few quotations therefrom:

"Ques. What was the conversation about, Mrs. Robertson? . . . Ans. She always told Mrs. Clark that after her death the land where she lived would be mine, if I stayed with her and took care of her until she died."

"Q. Now, you may tell what your mother said to Mrs. Clark about that. A. She always told she sent to Scotland and wanted to take me here to take care of her, and if I stayed here it was mine after her death."

"Q. Did you ever hear your mother say anything to Mrs. Clark about the farm you were living on? A. Yes, sir; that was all she had, and it was that that she was to leave me, if I stayed with her."

"Q. Go ahead. A. She told Mrs. Clark that I was n't satisfied to stay with her, but if I stayed with her until after her day, it would be mine—the farm that she was on."

"Q. Did you ever hear your mother say anything to Mrs. Clark about how she intended the farm to become yours? A. No, sir. She just said she was going

to fix it after her death to be mine, and that is all I ever heard her say. She would leave it." '

"Q. Now, Mrs. Robertson, do you remember anything else that you heard your mother tell Mrs. Clark in regard to what she had told you? A. Nothing further than that; that the land would be mine after her death, if I stayed there and took care of her. She was going to fix it that way if she was able to get to Wellington here; that she was going to fix it that way."

This is only a small part of the entire evidence of this character admitted. Under the rule stated by this court in the cases of *McKean v. Massey,* 9 Kan. 600, *Jaquith v. Davidson,* 21 Kan. 341, and *McCartney v. Spencer, Ex'r,* 26 Kan. 62, this witness was competent to testify to a conversation had between her mother and another. The evidence itself is competent, as it tends to show that the mother had agreed to pay for the services of the plaintiff, and that such payment was to be made by the provisions of a will. (*Bonebrake v. Tauer,* 67 Kan. 827, 72 Pac. 521.)

Several neighbors testified to conversations had by them with the mother, in which she stated that she intended to send to Scotland for the plaintiff to come and live with her while she lived; and it is shown that she did send money to the plaintiff to pay the expenses of the latter's trip to Kansas. The mother also stated to several visiting neighbors that Ina was going to take care of her the rest of her life, and was to have the farm in payment therefor; and that she intended to fix it that way as soon as she was able to go to Wellington. She also remarked that they were lonesome there, living alone, and that Ina did not like to stay, but she would not leave—"she is a good, good girl, and will be paid well for her trouble." It also appears that the plaintiff's husband urged her to leave her mother and go with him to their own place, which she refused to do, and he went to it alone and remained apart from her much of the time during the last two years of the mother's life.

Griffith v. Robertson.

The rendition of the services by the plaintiff is not denied. That the mother intended to pay liberally therefor is clearly shown. The conclusion that the plaintiff at all times expected to be paid therefor is fully justified by the evidence. That there was an express contract between the mother and daughter is a fair deduction from the testimony. That the plaintiff was kind and careful of her mother's comfort during her illness is shown by the repeated statement of the mother that "Ina is a good, good girl." The fact that payment was to come after the mother's death, if the service continued to that time, and that an arrangement for this purpose was to be made when the mother went to Wellington, suggests that it was intended that payment would be provided for by the provisions of a will.

Under ordinary circumstances—that is, if no family relation existed—the law would imply a promise on the part of the deceased to pay for the services received. But in compliance with a wise and beneficent public policy, designed to protect and preserve the relations which belong to home and the family fireside, the law presumes all such services to have been rendered solely from considerations of filial affection and duty. This, however, like any other presumption of fact, may be overcome, and a contract, if any existed, may be established by any competent evidence. It is not essential that a formal offer and acceptance, in writing or otherwise, be shown. In the absence of more direct evidence the fact may be established by circumstances. An express contract exists whenever there is a mutual meeting of the minds upon any contractual proposition. The essential contractual proposition in this case is: Were the services in question to be paid for? What was the mutual understanding of these parties upon this subject? This was a proper question for a jury, and that tribunal has answered that the parties intended that the services should be paid for.

Many objections are made to the instructions of the court, both on account of those refused and those given. These are too numerous to discuss in detail. The principal contention of counsel may be shown by one instruction asked and refused which reads:

"Briefly stated, a contract can only be entered into when there are at least two competent contracting parties, and one or more definite propositions or offers are made by one for the acceptance of the other, and such propositions or offers are accepted by the other, absolutely as made, in such way that each knows the state of mind of the other on the offers."

The court's view of the law applicable to this case is shown by instructions given which read:

"(6) If you should find from the evidence, by a preponderance thereof, that the services claimed for, or any part thereof, were performed by the plaintiff for the deceased, upon an express contract that the same should be paid for, or with the understanding and agreement of both the plaintiff and the deceased that same should be paid for, then you should find for the plaintiff, and should allow her in your verdict the fair and reasonable value of such services as she so rendered at the time and place where rendered. Unless you so find you must find for the defendant."

"(9) It is not necessary that the plaintiff prove the exact words of the contract or agreement had between herself and her mother, if you find that she had an agreement with her mother; but in determining whether there was such an agreement you may take into consideration such evidence as has been given before you of the declarations and statements of the plaintiff's mother. If you find that she made such declarations and statements, and all the facts and circumstances surrounding the plaintiff and her mother, and if from these declarations and the facts and circumstances surrounding the parties you believe from a preponderance of the evidence that the plaintiff and her mother did have an agreement that the plaintiff should be compensated by her mother by making provision for her out of her estate, then your finding should be for the plaintiff.

"(10) If you find from a consideration of all the

Griffith v. Robertson.

evidence that there was a mutual understanding between plaintiff and her mother that the plaintiff should be compensated for working for her mother, and caring for her, and that she did the work and cared for her as she claims under such mutual understanding, then your finding should be for the plaintiff.

"(11) The plaintiff must recover in this action, if she recovers at all, on the agreement which she alleges she had with her mother; and the burden of proof is upon her to show by a preponderance of the evidence that she had a contract with her mother by which her mother was to pay her for her services, by making a provision for her to be paid out of her estate."

The court uses the words "understanding and agreement" as equivalent to "express agreement," and to this vigorous objection is made. We think the instruction requested requires a formality unnecessary in any case—one seldom observed between parent and child, and contains conditions not applicable to the evidence in this case. It was therefore properly rejected. As before stated, we think that a mutual meeting of the minds upon a matter of contract creates an express contract, whether evidenced by a formal offer and acceptance or otherwise. The case of *Ayres v. Hull*, 5 Kan. 419, is in many respects similar to this. In that case Chief Justice Kingman, in the following language, stated that a mere promise or understanding between the parties would be sufficient:

"For nearly eight years the defendant in error lived in the house and formed part of the household of the brother, rendering services, abundantly proved to have been valuable, and receiving in return but a scanty supply of clothing, a living, and a home. Had there really existed any contract, or promise, or understanding, between the parties, we would not disturb the judgment." (Page 424.)

Complaint is also made of instructions upon the amount of recovery. We think the criticism made here is due more to the condition of the proof than to the action of the court. The only evidence upon the subject of the value of the services shows the value

43—73 KAN.

of the ordinary service of a servant-girl on a farm to be three dollars a week, and that of trained or partially trained nurses to be from ten dollars to fifteen dollars per week. The services embraced farm work, housekeeping, and nursing. The plaintiff was not a trained or experienced nurse, but gave all the care and attention to her mother possible, besides looking after every other matter about the place. The evidence upon this subject was all given by the plaintiff. From it the jury had to reach a conclusion as to the amount the plaintiff's labor was reasonably worth. The court directed them, in substance, to consider the evidence given, and any facts within common knowledge, and award such amount as to them seemed reasonable and just. We see no error in this. The court throughout its instructions repeatedly presented the idea that no recovery could be had unless an express contract be shown, and that the amount of recovery should be the reasonable value of the services rendered.

We have carefully examined all the instructions given and think that they fully and fairly presented the case. We are unable to find any error sufficient to reverse the judgment of the court, and it is therefore affirmed.

All the Justices concurring.