(844 P.2d 745)

No. 67,763
No. 68,003

HOELTING ENTERPRISES, a general partnership, *Appellant/Cross-appellee*, v. TRAILRIDGE INVESTORS, L.P., *Appellee/Cross-appellant*.

Opinion filed January 8, 1993.

*Thomas W. Harris*, of Law Offices of Roy S. Bennett, Jr., of Shawnee, for the appellant/cross-appellee.

*Steven R. Anderson*, *David C. Seitter*, and *Bernard D. Craig, Jr.*, of Levy and Craig, P.C., of Overland Park, for the appellee/cross-appellant.

Before GERNON, P.J., DAVIS and RULON, JJ.

DAVIS, J.: This is an appeal by a mortgagee from an order of the trial court holding that the mortgagee was not entitled to the rents and profits from an apartment complex after default by the mortgagor. The mortgage and a separate agreement provided for the assignment of rents as additional security upon default, and the mortgagee initiated legal action after default to secure its rights to the rents and profits. The mortgagor cross-appeals, contending that the order of confirmation was prematurely entered, requiring remand for another sale. We reverse and remand for a determination of the rents due and owing to the mortgagee.

Trailridge Investors, a limited partnership, executed a wrap mortgage on an apartment complex to secure payment of a loan of $5,177,500 from Trailridge, Inc., a corporation owned by the Hoelting family. Trailridge, Inc., was dissolved, and Hoelting Enterprises is successor in interest to Trailridge, Inc. The mortgagee hereinafter is identified as Hoelting, and the mortgagor hereinafter is identified as Trailridge.

Trailridge executed a mortgage, two promissory notes, and an assignment of rents agreement. The property subject to the mortgage commonly is known as Trailridge Apartments. One promissory note was in the amount of $652,500 and has been paid in full. The other, in the amount of $4,525,000, has not been paid. The parties also executed a security agreement evidencing Hoelting's security interest in the personal property located on the real property. The following terms of the agreements between Trailridge and Hoelting are not in dispute:

1. In the event of default on the mortgage, Hoelting was entitled to immediate possession of the property and rents subject to the New York Life Insurance Company's rights under a senior lien. Hoelting was entitled to use those rents in its discretion to maintain the property, collect rents, pay taxes and insurance, and apply any balance to its debt. In the mortgage, Trailridge specifically assigned to Hoelting its right to the rents and profits.

2. The promissory note specifically provided that it was secured by the mortgage, assignment of rents and leases, and security agreement.

3. The parties executed a separate document entitled "Assignment of Rents Agreement" as additional collateral for the notes and mortgage. This agreement specifically authorized Hoelting to take possession of the premises and collect the rents if Trailridge defaulted on the note or mortgage.

4. In the mortgage, Trailridge also agreed that if it defaulted, the court "may . . . without respect to the condition or value of the Property" appoint a receiver to maintain the property, collect the rents, and apply the rents to·payment of the promissory notes pending conclusion of the foreclosure action.

5. Under the terms of the mortgage, Trailridge waived its redemption rights.

6. The mortgage provides that its lien is subordinate to the lien of a mortgage securing payment of promissory notes payable to New York Life (the senior lien holder).

7. The mortgage provides that Hoelting was to make principal and interest payments due to New York Life under the senior lien provided Trailridge (1) was not in default under the Hoelting mortgage and (2) complied with all of the other terms of the senior lien.

8. A letter agreement among New York Life, Trailridge, and Hoelting (attached to and incorporated in the Hoelting mortgage) provided that, in an action to foreclose the wrap mortgage, rents and profits could only be collected by a court-appointed receiver after New York Life was notified of the application for a receiver.

9. The letter agreement also specified how the proceeds collected by the receiver were to be applied: (1) Maintenance of premises; (2) taxes and other assessments on premises; (3) principal and interest due New York Life; and (4) principal and interest due Hoelting.

10. The same letter agreement also was attached to and incorporated in the Assignment of Rents Agreement.

Trailridge defaulted on the wrap mortgage in December 1988. In February 1989 the Hoelting family, as individuals and successors in interest to Trailridge, Inc., filed a foreclosure action against Trailridge and others. In addition to foreclosure of the mortgage and other relief, the petition sought immediate pos-

session of the property and rents or appointment of a receiver to collect the rents during the pendency of the action. On February 15, 1989, Hoelting filed an application for immediate possession of the property and rents or appointment of a receiver.

In March 1989, before the trial court ruled on Hoelting's application for rents or appointment of a receiver, Trailridge filed for bankruptcy under Chapter 11, and Hoelting's foreclosure action automatically was stayed. In a joint stipulation filed in the bankruptcy action, Trailridge agreed to pay to Hoelting the principal and interest due to New York Life under the senior lien and to pay the taxes and insurance on the property. The stipulation was to remain in effect until the earlier of the final order confirming the reorganization plan, an order converting or dismissing the bankruptcy case, or until otherwise ordered by the court.

Subject to the payments required under the stipulation, Trailridge was allowed to use the rents during the pendency of the bankruptcy proceedings. After the foreclosure action was filed and during the bankruptcy proceedings, all expenses of the property were paid except the principal and interest due to Hoelting. The New York Life note was paid in full on April 1, 1991, and Hoelting thereafter applied Trailridge's monthly payments to the principal and interest due Hoelting under the wrap mortgage.

The bankruptcy court dismissed Trailridge's action on September 27, 1991, because the debtor's plan was not confirmable. During the pendency of the bankruptcy action, Trailridge had accumulated rents of $588,842.58 in the debtor-in-possession account. Trailridge retained possession of the rents and profits from the property after the bankruptcy court dismissed its petition.

On October 11, 1991, Hoelting filed its first amended petition in the foreclosure action. The petition again sought immediate possession of the property and assignment of all rents or appointment of a receiver to receive the property and rents during the pendency of the action. On the same day, Hoelting filed its amended application for property and rents or a receiver and for enforcement of the assignment of rents.

On February 6, 1992, the court entered its order adjudicating the rights of the parties. The pertinent findings are summarized below:

1. Trailridge defaulted on the note and mortgage on December 1, 1988, and has not cured the default. It presently owes Hoelting $6,310,206.06 in principal and interest plus interest at a rate of $1,553.83 per day until paid.
2. Hoelting had a first and prior lien on the property and was entitled to have its mortgage and security interest foreclosed.
3. Trailridge had waived its redemption right.
4. Subject only to the payments required under the joint stipulation in the bankruptcy court, Trailridge was allowed to use the rents and profits from the property.
5. Trailridge continued to make payments to Hoelting in accordance with the bankruptcy stipulation after the New York Life note was paid. Hoelting wrongfully applied Trailridge's monthly payments to the interest debt Trailridge owed Hoelting under the wrap mortgage. Those payments, totalling $43,481.58, are deemed replaced in the tax and insurance escrow for the property.
6. As of September 30, 1991, Trailridge had accumulated $588,842.58 in its debtor-in-possession account from rents and profits. Trailridge paid expenses from the rents and profits.
7. "Since plaintiff [Hoelting] is not entitled to possession of the premises or appointment of a receiver, plaintiff did not and does not have a perfected security interest in or lien against the funds held by the defendant generated from the rents and profits. . . . Defendant [Trailridge] is entitled to keep all rents and profits is [sic] receives from the subject property and plaintiff has no legal right to make any claim against the rents and profits held by defendant."
8. The court granted Hoelting judgment in rem against Trailridge in the amount of $6,310,206.06 plus interest on the principal sum of $1,553.83 per day until paid, limited to collection against the collateral granted to plaintiff by its mortgage and security instruments.

The trial court issued an order of sale and Hoelting published notice of the sale on February 19, 1992. The sale took place on March 12, 1992, and Hoelting successfully bid $4,525,171.30, leaving a deficiency of $1,839,590.11. Trailridge objected to the confirmation, alleging that the sale was not conducted in conformity with the law because Hoelting prematurely requested and

received the order of sale and published its notice of sale. The court confirmed the sale on March 23, 1992.

On March 23, 1992, the sheriff conducted the personal property sale, and Hoelting successfully bid $75,059.36, reducing the deficiency to $1,771,242.87. The court confirmed the sale on April 6, 1992.

In its cross-appeal, Trailridge contends that the district court should not have confirmed the sale because the execution of the judgment issued before the expiration of 10 days after entry of judgment in violation of the automatic stay of execution in K.S.A. 60-262(a). The time between entry of judgment and issuance of the sale order is less than 10 days when the days are counted in accordance with the time computation rules in K.S.A. 1991 Supp. 60-206(a). Hoelting argues that the computation requirements of 60-206(a) do not apply to the time specified in 60-262(a) and that this was a receivership action and thus within a statutory exception to the stay of execution.

It appears to us that Trailridge is correct because K.S.A. 1991 Supp. 60-206 by its terms applies to computation of time prescribed by Chapter 60. We need not decide this issue because both parties in oral argument agreed that the single issue they seek to resolve by this appeal is who is entitled to the rents and profits between default and sale confirmation. This court specifically asked Trailridge whether it was seeking a remand to comply with the time requirements of 10 days' notice, and Trailridge indicated that it was not seeking remand for that purpose, but only a determination of the issue involving rents. We conclude that the issue on cross-appeal is no longer an issue between the parties. We therefore affirm the order of sale.

Hoelting claims that it took all action necessary to perfect its right to the rents and profits between default and sale. Trailridge contends that the court correctly declined to award Hoelting rents because Kansas law requires the mortgagee to take possession of or have a receiver appointed to collect the rents before it is entitled to rents and profits. Both contentions have merit and the issue is one of first impression in this state.

Discerning the effect of an assignment of rents mortgage clause is difficult in Kansas because Kansas is a "lien theory" jurisdiction, not a "title theory" jurisdiction:

"Under Kansas law, a mortgage is not a conveyance of an interest in land. '[T]he mortgagee acquires no estate whatever in the property, either before or after condition broken, but acquires only a lien securing the indebtedness described in the instrument.' *Hall v. Goldsworthy*, 136 Kan. 247, 249, 14 P.2d 659 (1932)." *Missouri Valley Investment Co. v. Curtis*, 12 Kan. App. 2d 386, 388, 745 P.2d 683 (1987).

In a "title theory" jurisdiction, on the other hand, the mortgage is viewed as a form of title to property. Randolph, *The Mortgagee's Interest in Rents: Some Policy Considerations and Proposals*, 29 Kan. L. Rev. 1, 9 (1980). In lien theory states, a mortgagee is not entitled to immediate possession of the property upon default because the mortgage is merely a lien and not a form of title. *Mid-Continent Supply Co. v. Hauser*, 176 Kan. 9, 15, 269 P.2d 453 (1954); *Missouri Valley Investment Co. v. Curtis*, 12 Kan. App. 2d at 388.

Under Kansas law, therefore, a purely executory agreement alone is not effective to vest in a mortgagee the right to rents and profits. See generally *Hall v. Goldsworthy*, 136 Kan. 247, 249-51, 14 P.2d 659 (1932). The right to rents and profits may vest in a mortgagee, however, if (1) the mortgagor defaults and the court appoints a receiver, *Mid-Continent Supply Co. v. Hauser*, 176 Kan. at 15 or (2) the mortgage assigns the rents and the mortgagee reduces the rents to his possession by proper legal action. See generally, *Home Owner's Loan Corp. v. Benner*, 150 Kan. 108, 111, 91 P.2d 9 (1939); *Hall*, 136 Kan. at 251-52. Proper legal action that may vest in a mortgagee the right to rents and profits pursuant to such an assignment includes a court's appointment of a receiver, *Holton B. & L. Ass'n v. Gibson*, 139 Kan. 829, 831-32, 33 P.2d 138 (1934); *Missouri Valley Investment Co.*, 12 Kan. App. 2d at 388, and a mortgagor's voluntary consent to the mortgagee obtaining possession of the rents. *Kershaw v. Squier*, 137 Kan. 855, 22 P.2d 468 (1933); *Farmers Union Jobbing Ass'n v. Sullivan*, 137 Kan. 196, 19 P.2d 476, *modified* 137 Kan. 450, 21 P.2d 303 (1933).

In the present action, the district court did not appoint a receiver and the mortgagor did not voluntarily relinquish possession of the rents and profits. Proper legal action, however, is not limited to a receivership or voluntary relinquishment of rents. *Hall*, 136 Kan. at 252. The issue before the court is whether

Hoelting's actions were sufficient proper legal action to vest in it the right to rents and profits assigned in the mortgage.

In *Hall v. Goldsworthy*, the court states that "[t]he mortgagee is not entitled to the benefit of the contract [assignment of rents] until he reduces the rents to his possession or control by proper action in the court." 136 Kan. at 251. This language lends some support to Trailridge's contention that, absent a court order appointing a receiver or other successful legal action vesting in the mortgagee the right to the rents, the mortgagor retains the right to rents and profits. We believe such a holding, however, would be too narrow and would not comport with Kansas law.

The court in *Hall* also stated that appointment of a receiver was not the only remedy available to a mortgagee seeking to obtain rents and profits pursuant to an assignment. The court noted that "[a]ny proper procedure which would empower the court to control the rents and profits would be sufficient to vest the mortgagee with title thereto." *Hall*, 136 Kan. at 252. We believe this language is broad enough to encompass a situation such as the one now before this court in which the mortgagee secured the assignment from the mortgagor, filed a foreclosure action when the mortgagor defaulted, and sought in that action the appointment of a receiver or possession of the rents. At that time, the court was empowered "to control the rents and profits." Assuming the assignment was valid and enforceable, Hoelting's actions were sufficient to vest in it title to the rents and profits.

Additional language in *Hall* also supports our conclusion. The *Hall* court, in discussing a mortgagee's rights to rents and profits, quoted from an annotation at 55 A.L.R. 1020, 1022: " '[A] mortgagee acquires no rights to the rents and profits until some action to reduce them to his possession *has been taken by him.*' " (Emphasis supplied.) 136 Kan. at 251. The court also noted that rent assignments do not become effective " 'until the mortgagee . . . *asserts his rights.*' " (Quoting 41 C.J. 628; emphasis supplied.) 136 Kan. at 251. The court also quoted an Iowa case that held that " 'the right of the holder of a mortgage upon real estate, pledging the rents and income as security to the defendant for the same, does not arise until *action has been commenced to enforce collection of the debt.*' " (Quoting *First Nat. Bk. v. Security T. & S. Bk.*, 191 Iowa 842, 844, 181 N.W. 402 [1921];

emphasis supplied.) 136 Kan. at 251. Each of these passages supports the notion that, given a valid assignment of rents and profits, the mortgagee's right to such rents and profits vests when the mortgagee initiates proper legal action to enforce its rights to those rents and profits. Such action empowers the court to control those rents and profits. We are convinced and so hold that a mortgagee's right to receive rents and profits validly assigned to it vests when the mortgagee initiates proper legal action to enforce its right.

Hoelting did everything it could to reduce the rents to its or a receiver's possession by appropriate legal action. The terms of the agreements between the parties reflect an intent that Hoelting was entitled to the rents and profits if Trailridge defaulted. The mortgage so provided, and the additional assignment of rents and profits contemplated that the rents were to be additional collateral for the loan. In the mortgage, Trailridge agreed that if it defaulted, the court could appoint a receiver regardless of the condition of the property, and that the receiver was to collect the rents and apply them to the debt secured by the mortgage. Even the senior lien holder's agreement with Hoelting and Trailridge contemplated Hoelting's entitlement to rents and specifically required the appointment of a receiver if Trailridge defaulted and Hoelting filed a foreclosure action. From the outset of this transaction, the parties intended that Hoelting immediately would be entitled to rents and profits if Trailridge defaulted, and they entered into numerous agreements to accomplish that goal.

We recognize that under Kansas law the above executory agreements would not be sufficient to vest Hoelting with the right to such rents. The following additional facts, however, support our conclusion that Hoelting's action was effective to vest such rights in Hoelting. After Trailridge defaulted in December 1988, Hoelting promptly filed its foreclosure action, including its request for immediate possession of rents or the appointment of a receiver to collect the rents and profits. The next day Hoelting filed its specific application for possession of rents or for the appointment of a receiver to collect the rents pending foreclosure.

In spite of the provisions of the agreement concerning the appointment of a receiver for the collection of rents pending foreclosure, the court did not act upon Hoelting's request. Six

weeks later, Trailridge filed for bankruptcy under Chapter 11, which automatically stayed the foreclosure proceedings for two and one-half years. After the bankruptcy court dismissed the action, Hoelting immediately moved to reactivate the foreclosure action and filed its amended petition and application for possession of the rents or appointment of a receiver.

Hoelting invoked the jurisdiction of the court when it filed its petition, and Hoelting specifically sought, in its petition and by separate motion, the appointment of a receiver or immediate possession of the rents. Such action constitutes a "proper procedure which would empower the court to control the rents and profits" and is sufficient "to vest the mortgagee with the title thereto." *Hall v. Goldsworthy*, 136 Kan. at 252. As mentioned above, assuming a valid assignment of rents, the vesting of Hoelting's rights does not depend upon the court's appointment of a receiver to collect the rents but rather depends upon the legal action Hoelting took to secure those rights.

The trial court emphasized the joint stipulation filed with the bankruptcy court that governed disposition of the rents during the pendency of the bankruptcy proceedings. After dismissal of the bankruptcy proceedings, the trial court held as a matter of law that Hoelting was not entitled to the rents because it was not entitled to possession of the premises or the appointment of a receiver. The court erred in so holding. Trailridge does not challenge the validity of its agreements assigning the rents to Hoelting. Given the valid assignment and the foregoing analysis, we conclude that Hoelting's foreclosure petition, request for immediate possession of the premises, and application for the possession of the rents or for the appointment of a receiver had the legal effect of vesting the rights to rents and profits in the mortgagee, Hoelting. We therefore reverse and remand for the purpose of determining the amount due and owing to Hoelting under our decision.

The parties discuss at length the applicability and effect of K.S.A. 1991 Supp. 58-2343(b). In pertinent part it provides:

"The lien of an assignment instrument shall be a good, valid and enforceable lien on the rents from real property therein described. Such lien shall be valid and binding against, unavoidable by and fully perfected as to the borrower . . . for all purposes from the time of filing the assignment in-

strument or an affidavit of assignment of rents . . ., with a priority dating from the time of such filing, without any necessity for the lender to take possession or control of such rents or the property from which such rents are derived, to take any action tantamount to the taking of such possession or control, or to take other action whatsoever."

Hoelting argues that the above provisions are procedural and should be applied retroactively in accord with *Nitchals v. Williams*, 225 Kan. 285, Syl. ¶¶ 1 and 3, 590 P.2d 582 (1979). Trailridge argues that the statute merely codifies common law but, if anything, it is substantive. We need not address this issue based upon our holding.

Reversed and remanded with directions.