(351 P.3d 663)
No. 110,768

In the Matter of the Estate of BLANCHE A. AREA, Deceased.

Opinion filed May 29, 2015.

*Clifton B. DeMoss, Jr.*, of Basehor, and *Keith C. Sevedge*, of Lenexa, for appellant administrator David P. Mikesic.

*Dennis A. White*, of White Law Office, of Holton, for appellees children of decedent.

*Brian M. Vazquez*, of Health Care Finance Legal Group, Kansas Department of Health and Environment, of Topeka, for appellee Estate Recovery Program.

Before HILL, P.J., STANDRIDGE and ATCHESON, JJ.

HILL, J.: This is an appeal of a district court order declaring that an administrator of an intestate estate lacked standing to appeal a magistrate's ruling that the Estate of Blanche A. Area was legally liable for a note. For reasons set out below, we reverse and remand.

*A lady moves from her home to assisted living.*

Blanche A. Area lived in Horton and had seven children. Five of her seven adult children agreed to lend her money to build a home in Horton. On June 27, 1995, Blanche signed a promissory

note in favor of her five children promising to repay their loan. The note was secured by a mortgage, which was executed and recorded on the same day. At its creation, the note was in the amount of $53,750 with a 10 percent annual interest rate. The note was due *in full* on July 1, 2005. Blanche never made a payment on this note.

More than 5 years after the note was due, Blanche moved into an assisted living facility in November 2010. At that time, the five children took control of their mother's home; they each contributed to an account, which provided for maintenance, taxes, and insurance on the mortgaged property. On June 28, 2011, Blanche signed a quitclaim deed where she and her son, Jack Area, were named as joint tenants with the right of survivorship. Blanche, a widow, died intestate on July 4, 2011.

*Her estate was opened by the State.*

The Kansas Department of Health and Environment's Division of Health Care Finance filed a petition to open Blanche's estate. The Department nominated David P. Mikesic to act as the administrator. The court opened the estate and appointed Mikesic as the administrator.

Because Blanche received medical assistance from the Kansas Medicaid program for various medical expenses incurred before and when she was in assisted living, the Kansas Estate Recovery Contractor, acting on behalf of the Kansas Department of Health and Environment's Division of Health Care Finance, filed a petition for the allowance and classification of its demand to recoup the medical assistance. The State's claim against the estate, made under K.S.A. 39-709, was in the amount of $32,814.46 for her medical assistance. The court allowed the demand and classified it as a first-class claim.

Jack Area, one of Blanche's children, also sought the allowance and classification of a demand from the court. He claimed he was one of the holders of the promissory note and the amount owed on the note with accrued interest by that time was $105,943. The administrator opposed the allowance of this claim, contending that recovery under the note and mortgage was barred by the statute

of limitations. According to the administrator, the debt was unenforceable against the estate.

The parties asked the court for permission to sell the real estate and personal property at a private sale. The district court authorized the sale of both. The real estate sold for $110,000, and the five children purchased the personal property for $2,250.

The five children then petitioned the court to use the proceeds from the sale to satisfy the unpaid note. They claimed they were holders of a valid note, which was secured by a mortgage on the real estate, and they had possessed the real estate since November 2010 "to protect their security." In other words, they claimed to be mortgagees in possession. The magistrate granted their petition to pay the sale proceeds to the five children. The administrator appealed this order to the district judge.

In due course, the district judge held that under principles of equity and public policy the note was valid and the loan was to be repaid to the five children. The administrator asked the judge to reconsider. In its decision on the petition to reconsider, the district court dismissed the administrator's appeal for lack of standing and affirmed its prior ruling.

In this appeal, the administrator of the estate contends that the district court erred when it ruled that he had no standing to appeal the ruling of the magistrate. Also, the administrator argues that the district court disregarded the plain language of the note and mortgage and ignored the applicable statute of limitations when it affirmed the magistrate's ruling. Finally, the administrator argues the district court also erred by trying to create a public policy exception to the statute of limitations.

*The administrator of the estate had standing to appeal the magistrate's ruling.*

When the administrator appealed the magistrate's order to pay the five children from the funds obtained through the sale of the real estate, the district court affirmed the magistrate's decision:

"It seems to this Court under the unique facts of this case the public policy for families helping an elderly parent to live in a dignified decent manner for as long as possible should win over the policy for the State to recover tax dollars.

"It seems to the Court the equity under these unique facts lends itself to the position of the children and allowing them to recoup their amount under the note."

When the administrator asked the district court to reconsider, the district court, for the first time, addressed the administrator's standing. The district court held:

"This Court continues to believe the administrator has exceeded his duties and functions under Kansas law.

"The Court believes the administrator lacks standing to appeal [the magistrate's] orders."

Since standing is a major component of subject matter jurisdiction, we will address this issue first.

It is clear that when the administrator brought the appeal to the district judge he was acting within his statutory and court-appointed authority as a fiduciary. The law imposes great responsibilities on an administrator. K.S.A. 59-1401 lists them:

"**Possession of property by executor or administrator; marshaling assets; duties prior to final distribution.** The executor or administrator shall: (a) Have a right to the possession of all the property of a resident decedent, except the homestead and allowances to the surviving spouse and minor children; (b) marshal all tangible personal property owned by a resident decedent located in the state of Kansas and all intangible personal property owned by a resident decedent wherever located, either directly or by ancillary administration; (c) take possession, within six months from the date of appointment, of all tangible personal property located in this state and all intangible property wherever located, to be held, administered and finally distributed as provided by law, but nothing herein shall require an executor or administrator of a resident decedent to take possession of intangible personal property being administered in another jurisdiction, if the court in which such administration is pending refuses to authorize delivery of possession; (d) pay the taxes and collect the rents and earnings on the property until the estate is settled or until delivered by order of the court to the heirs, devisees and legatees; and (e) keep in tenantable repair the buildings and fixtures under the executor's or administrator's control and may protect them by insurance. The executor or administrator, alone or with the heirs or devisees, may maintain an action for the possession of the real estate or to quiet title to it."

Going further, we note K.S.A. 60-1002(b) provides: "When a lien on property has ceased to exist, or when an action to enforce a lien is barred by a statute of limitation or otherwise, the owner of the property may maintain an action to quiet title." In *Great*

*Plains Trust Co. v. Wallin*, No. 99,483, 2008 WL 5135043, at *5 (Kan. App. 2008) (unpublished opinion), *rev. denied* 289 Kan. 1278 (2009), this court noted: " 'An executor or administrator stands in the shoes of the decedent in respect to mortgages given by the decedent, whether in fraud of creditors or otherwise.' *In re Kastner Estate*, 113 Kan. 106, 107, 212 P.687 (1923)."

Here, the magistrate found the appointment of an administrator for Blanche's estate was necessary and that Mikesic was a suitable and proper person to be appointed as administrator, and then the magistrate granted Letters of Administration to him. Mikesic submitted his oath of administrator on September 19, 2011. Neither the appointment nor the suitability of Mikesic had been questioned by anyone with an interest in the estate.

When Jack Area filed his petition on the note and mortgage following the correct probate procedures, the administrator filed his written defenses to the demand. The administrator had permission from the probate court to act in his capacity to defend claims against Blanche's estate. This is how demands are contested in probate cases.

Clearly, as the landowner, Blanche Area would have had standing to challenge the enforceability of a note and mortgage in order to quiet title. As a fiduciary of the estate, the administrator stands in the shoes of the decedent and has the duty to assert the same challenge. Here, the administrator had standing to pursue the claim that the statute of limitations was applicable and the note and mortgage were unenforceable.

Without any explanation or elaboration, the district judge simply ruled the administrator had exceeded his authority. We do not see how that occurred. Obviously the sale proceeds of the real estate were the bulk of this estate, but the administrator was simply defending the estate against a claim for those funds.

*In re Estate of Hessenflow*, 21 Kan. App. 2d 761, 909 P.2d 662 (1995), *rev. denied* 259 Kan. 928 (2006), is instructive. When writing about the fiduciary responsibilities of an executor of a will, a position that is not appreciably different than an administrator of an intestate estate, the *Hessenflow* court stated:

"The position of executor is a trust; it is fiduciary in character, and its holder is a trustee for all persons interested in the estate. As the fiduciary of all interested parties, an executor has a duty to see that their rights are correctly adjudicated. An executor is also, in a sense, the representative of the deceased, and it is part of his or her duty to see that any will is properly executed." 21 Kan. App. 2d 761, Syl. ¶ 6.

In our view, Mikesic, as the administrator, is in a similar office. He is a trustee and has a fiduciary responsibility to the entire estate and the rights of all interested parties. In fact, if he had tried to waive the statute of limitations defense in some way, he would have been in violation of his fiduciary duty to the estate.

The district court erred by finding the administrator lacked standing to challenge the claim. The administrator properly asserted the statute of limitations as a defense against the enforceability of the note and mortgage lien.

*Was this note enforceable?*

The administrator argues the district court erred when it affirmed the magistrate's decision to enforce the note and mortgage against the estate. He contends the district court disregarded the plain language of the note and mortgage, failed to apply the governing statute of limitations, and impermissibly applied principles of equity and public policy.

On the other hand, the five children argue the statute of limitations is inapplicable under the principles of equity and public policy. They argue they did not have to foreclose on their mother's mortgage in order to recover the debt. Indeed, in their view, as a matter of public policy, they should not be forced to take action against their mother. The five children also claim the statute of limitations does not apply because "the law generally favors the proposition that one should pay his debts." They further contend they were mortgagees in possession prior to the administrator's actions and the statute of limitations did not affect the validity of the debt.

*We examine the statute of limitations first.*

Obviously, the application of the statute of limitations is a matter of statutory interpretation. Interpretation of a statute is a question

of law over which appellate courts have unlimited review. *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Nationwide Mutual Ins. Co. v. Briggs*, 298 Kan. 873, 875, 317 P.3d 770 (2014). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words ´ their ordinary meanings. *Cady*, 298 Kan. at 738.

The applicable limitation statute, K.S.A. 60-511(1), provides: "The following actions shall be brought within five (5) years: (1) An action upon any agreement, contract or promise in writing." The note here was an agreement, a contract, or a promise in writing as contemplated by the statute and, therefore, the 5-year period set forth in the statute of limitations was applicable. We see no exemption for family contracts in the statute.

This promissory note was secured by a mortgage; both documents were executed and recorded in Jackson County on June 27, 1995. According to the contract: "This note together with accrued interest thereon shall be due and payable in full on July 1, 2005, or in the event of my death prior to said time shall be payable on the sale proceeds of the real estate, upon which the loan was made." The five children have signed a letter agreeing that Blanche never made a payment on the mortgage.

From the plain language of the note, the entire loan with interest was due on July 1, 2005. No payments were ever made. As of July 1, 2010, some action on the loan—such as any payments or foreclosure—needed to occur in order to avoid the effect of the 5-year statute of limitations. The five children did not take any action until November 2010. The only actions the five children took were paying the taxes, insurance, maintenance, and marketing the property for sale after their mother was hospitalized. The district judge clearly ignored the language of the note.

The five children argue they became mortgagees in possession in order to protect their interests. The five children did not "possess" the property until November 2010—after the 5-year limitation on the enforcement of the note had expired. The five children

could not be mortgagees in possession because the note and the mortgage were no longer valid after July 1, 2010.

The expression "mortgagee-in-possession" has been adopted by the courts and law writers as a convenient phrase to describe the condition of a mortgagee who is in possession of mortgaged premises under such circumstances as to make the satisfaction of the mortgagee's lien a prerequisite to the mortgagee being dispossessed of the property. *Mid Kansas Fed'l Savings & Loan Ass'n v. Zimmer*, 12 Kan. App. 2d 735, 739-40, 735 P.2d 1352 (1988). In other words, if you want possession of the real estate, you must first satisfy the mortgagee's lien.

Kansas is a "lien theory" jurisdiction. See *Hoelting Enterprises v. Trailridge Investors, L.P.*, 17 Kan. App. 2d 777, 782-83, 844 P.2d 745, *rev. denied* 252 Kan. 1092 (1993). In a lien theory jurisdiction, the five children cannot simply claim to possess the real estate in order to protect their interests in the note and mortgage—they must take some legal action to protect their lien. See 17 Kan. App. 2d 777, Syl. ¶¶ 1, 3-5. Under Kansas law, a mortgage is not a conveyance of an interest in land. The mortgagee acquires no estate whatever in the property, either before or after any contract condition is broken, but acquires only a lien securing the indebtedness described in the instrument. 17 Kan. App. 2d at 783. The five children here had taken no legal action to enforce their lien until they filed their claim in their mother's estate. Because the statute of limitations had expired, the note and mortgage were unenforceable. See K.S.A. 60-511(1); *cf. Hoelting,* 17 Kan. App. 2d 777, Syl. ¶¶ 3-5. Said plainly, if there is no enforceable mortgage lien, these five children cannot be mortgagees in possession.

*The district court asserts public policy without showing authority for the assertion.*

While the district court said its ruling was based on principles of equity and public policy, it failed to provide any support that it had the authority to make this ruling. In its memorandum decision, the district court cited *Griffith v. Robertson*, 73 Kan. 666, 671, 85 P. 748 (1906), stating that "the [*Griffith*] Court noted a 'wise and beneficent public policy, designed to protect and preserve the re-

lations which belong to home and the family fireside . . . .' " We point out that in *Griffith* the court allowed a claim in an intestate estate by a daughter for her nursing and care for her mother for several years, including the mother's last sickness, under an express contract that payment for such services would be provided for in her mother's will. The "wise and beneficent policy" referred to by the *Griffith* court pertains to the presumption that the performance of such nursing services are solely from considerations of filial affection and duty. See 73 Kan. at 671. We fail to see how this presumption affects a note and mortgage signed by a mother to her five children.

The district court did not believe the five children should have to sue their mother to foreclose a mortgage and held the note was still valid and should be repaid. The district court held: "It seems to this Court under the unique facts of this case the public policy for families helping an elderly parent to live in a dignified decent manner for as long as possible should win over the policy for the State to recover tax dollars." The district judge pointed to no unique facts and to no written public policy. Usually such expressions come from statutes or from Supreme Court opinions. In effect, the district judge ignored the law and replaced it with a view that the five children ought to be repaid. But more accurately, the court's ruling was that five of the seven children should be paid with 10 percent interest.

We see no authority for the district court to rule that as a matter of public policy different rules apply to note and mortgage agreements involving familial relationships.

"Under the Kansas Constitution, the primary lawmaking body is the legislature. Courts must respect legislative expressions when determining or forming public policy. Given the right to form public policy by the legislature, courts are faced with three different situations: (1) The legislature has clearly declared the public policy of the state; (2) the legislature, though not directly declaring public policy, has enacted statutory provisions from which public policy may reasonably be implied; or (3) the legislature has not made a clear statement of public policy or such a policy cannot be reasonably implied." *Woodruff v. City of Ottawa*, 263 Kan. 557, Syl. ¶ 4, 951 P.2d 953 (1997).

Obviously, in drafting K.S.A. 60-511(1), the legislature did not declare special rules for familial contracts based on a matter of

public policy, and it could have easily done so. Instead, the legislature enacted the following language: "An action upon *any* agreement, contract or promise in writing." (Emphasis added.) K.S.A. 60-511(1). The use of the word "any" prevents the district court from ruling as a matter of public policy because, clearly, matters of public policy may not reasonably be implied.

The district court also erred by ruling that as a matter of public policy family contracts should be favored over payments to the State. The State's Medicaid claim was classified as a first-class demand. K.S.A. 59-1301 provides:

"If the applicable assets of an estate are insufficient to pay in full all demands allowed against it, payment shall be made in the following classified order:

"First class, the expenses of an appropriate funeral in such amount as was reasonably necessary . . . and . . . any claim for medical assistance paid under subsection (e) of K.S.A. 39-709 and amendments thereto. . . .

. . . .

"Third class, judgments rendered against decedent in the decedent's lifetime, all judgments or liens upon the property of the decedent shall be paid in the order of their priority."

K.S.A. 39-709(e) and the amendments thereto address the "[r]equirements for medical assistance for which federal moneys or state moneys or both are extended." Because the legislature granted the State priority in recouping its claims, the district court cannot claim a contrary public policy that the State should be paid after indebtedness involving children and their parents.

The five children argue that matters involving the statute of limitations are equitable in nature. In order to support their argument, the five children quote single sentences from cases where the term "equity" is used. However, they fail to expand on their arguments and take the quotations out of context.

For example, the five children first quote the court in *Erskine v. Dykes*, 158 Kan. 788, 794, 150 P.2d 322 (1944): "[S]uits to quiet title had their origin in equity jurisprudence."

The actual quotation is as follows:

"It may be observed that suits to quiet title had their origin in equity jurisprudence. In many jurisdictions, as in Kansas, provisions were made for statutory actions to quiet title. Whether such statutory actions entirely supplanted and displaced suits in equity need not be discussed, but that in such statutory actions in

this state equitable principles have been applied is beyond question." 158 Kan. at 794.

In *Erskine,* our Supreme Court also noted:

"Although the general rule is that a judgment in a foreclosure action is conclusive on all persons properly made parties to the action and that those who are not parties are not concluded [citation omitted,] yet there can be no doubt of the power of the legislature to provide statutes of limitations in which, under varying states of fact, actions for recovery of possession must be brought. [Citations omitted.] While such statutes are entitled to a liberal interpretation in order that their purposes may be served, where by their terms they designate particular subjects or classes of persons, ordinarily application will be restricted to such subjects or classes of persons unless there is a clear manifestation of a contrary intent. [Citation omitted.]" 158 Kan. at 793.

Simply put, *Erskine* is unpersuasive support because in *Erskine* the appellee was never served and was never a party to the foreclosure action. Our Supreme Court did not allow the statute of limitations to run against persons named as a party in a suit but who were never served with a summons to offer a defense. 158 Kan. at 794. These facts are obviously distinguishable from this case, where the five children never took any action to enforce this note until they filed a demand in their mother's intestate estate.

The district court also erred by applying principles of equity in this case. Generally, equitable remedies are not available if there is an adequate remedy at law. See *Mid-America Pipeline Co. v. Wietharn,* 246 Kan. 238, 242, 787 P.2d 716 (1990). This rule has become established in the jurisprudence of this state. In *Rex v. Warner,* 183 Kan. 763, 769, 332 P.2d 572 (1958), our Supreme Court said:

"No doctrine of equity jurisprudence is better settled than the rule that in the absence of the existence of a statute of limitations, the time in which a party will be barred from relief in a court of equity must necessarily depend to a certain extent upon the facts of each case as they may arise; but, when the statute has fixed the period of limitations under which the claim, if interposed in a court of law, would be barred, courts of equity by analogy follow the limitations provided by law. [Citations omitted.]"

It is a long-standing principle that equity will not lie when a legal remedy exists. See *Howe Machine Co. v. Miner,* 28 Kan. \*441, \*445 (1882). Here, the statute of limitations was applicable and provided

a legal remedy for the five children to take action on the note within the statutory period of 5 years. The five children failed to do so, and the district court could not disregard the statute of limitations based on unidentified equitable consideration.

The district court erred in affirming the magistrate's decision that the five children were entitled to payment. The district court further erred by finding the administrator lacked standing to challenge the enforceability of the note and mortgage. The statute of limitations was applicable to the note and mortgage, the note and mortgage were unenforceable, and the five children were not mortgagees in possession.

Reversed and remanded to the probate division of the district court with directions to deny the five children's claim on the note and mortgage.